IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES C. MCKENZIE,              )
                                  )
     Plaintiff,                  )
                                  )
v.                                )    CIVIL ACTION NO.: 2:10-CV-782-TFM
                                  )              [WO]
                                  )
GOVERNOR BOB RILEY, *et al.*,     )
                                  )
     Defendants.                 )

## MEMORANDUM OPINION

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate, alleges that rights, privileges, or immunities afforded him under the Constitution or law of the United States have been abridged by Defendants.   The defendants are identified as former Governor Bob Riley, former Attorney General Troy King, former Director of Public Safety -  J. Christopher Murphy, former Commissioner of the Alabama Department of Corrections  - Richard Allen, Director of Central Records - Kathy Holt, and Director of Classification - Carolyn Golson. Plaintiff requests trial by jury, damages, declaratory relief, preliminary and permanent injunctive relief, and costs.

Defendants filed an answer, special report, and relevant supporting evidentiary materials addressing Plaintiff's claims for relief.   The court informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for

summary judgment.  Plaintiff responded to the special report filed by Defendants.  Thus, this case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof, and the Plaintiff's opposition, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings,

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims properly before this court. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of

> professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

4

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. BACKGROUND

Plaintiff filed this action while incarcerated at the Elmore Correctional Facility in Elmore, Alabama. The evidentiary material before the court shows that Plaintiff was convicted in the Circuit Court for Jefferson County, Alabama, in 1988 (pursuant to his plea of guilty) on two counts of first degree rape and one count of first degree sexual abuse of three females ages nine, thirteen, and fourteen. Plaintiff states that he was released from custody on October 1, 2008 after completing his prison term. Not long thereafter, however, Plaintiff was returned to the custody of the Alabama Department of Corrections following his convictions for violating provisions of the Alabama Community Notification Act, *Ala. Code* 1975 § 15-20-1 *et seq*., (repealed). During the pendency of this action, Plaintiff was released from custody. (*Doc. No. 27, Exh. C*; *Doc. No. 31*.)

5

In the present action, Plaintiff alleges that the Alabama Community Notification Act ["the Act" or "ACNA"], *Ala. Code* 1975 § 15-20-1 *et seq.* (1975, as amended) (repealed), is unconstitutional as applied to him. He makes a variety of allegations claiming abuse, harassment, discrimination, and general hardship based on application to him of the ACNA. Plaintiff also asserts several federal causes of action as follows: 1)  Defendants' enactment, application, and enforcement of the ACNA violates his substantive rights, privileges and immunities protected by the Constitution; 2) Defendants' enactment, application, and enforcement of the ACNA violates the Civil Rights of Institutionalized Persons Act [CRIPA], 42 U.S.C. § 1997, *et seq.*; 3) Defendants' enactment, application, and enforcement of the ACNA violates the Religious Land Use and Institutionalized Persons Act [RLUIPA], 42 U.S.C. § 2000cc(1)(a), *et seq.*; and 4) Defendants' enactment, application, and enforcement of the ACNA violates the Americans with Disabilities Act [ ADA], 42 U.S.C. § 12101, *et seq.*. Plaintiff further complains that Defendants' enactment, application, and enforcement of the ACNA violates the Alabama Religious Freedom Amendment [ARFA], under art. I, § 3.01 of the Alabama Constitution. (*Doc. No. 1*.)  In an amendment to the complaint, Plaintiff claims that the State of Alabama does not provide a classification system for sex offenders on its public registry which would allow them to be grouped according to an individual assessment of dangerousness and risk of re-offending. (*Doc. No. 12*.)

### III.  DISCUSSION

*A.  The ACNA Claims*

    *i. Claims for Injunctive and Declaratory Relief*

The Alabama Community Notification Act became effective in 1996. On July 1, 2011, the Act was repealed by the Alabama Sex Offender Registration and Community Notification Act, Alabama Act No. 2011–640, § 49, Ala. Code § 15–20A–1, *et seq.*, ["ASORCNA"]. ASORCNA now governs the legal registration and community notification requirements applicable to adult sex offenders as defined in § 15-20A-4(1) and is "applicable to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose." Ala. Code § 15-20A-3.  Plaintiff is now subject to the provisions of ASORCNA due to his prior convictions for first degree sexual abuse and first degree rape.

Because the ACNA was repealed by the Alabama Sex Offender Registration and Community Notification Act. Ala. Code § 15–20A–1, *et seq.*, the court must decide whether repeal of the ACNA renders Plaintiff's challenges to the statute moot.  If repeal of the ACNA has rendered Plaintiff's challenges thereto moot, then such claims must be dismissed for lack of jurisdiction.

As explained, Plaintiff was convicted in 1988 of various sexual offenses.  Any past or  current challenges for declaratory and/or injunctive relief Plaintiff seeks to make regarding the validity of the ACNA and its applicability to his sexual abuse and rape

convictions and/or the Act's application to him or enforcement against him, however, are now moot due to repeal of the statute.

Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies." U.S. Const. Art. III, 2.  Federal courts are not permitted to rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before the court. *Lewis v. Continental Bank Corp.*, 494 US. 472, 477 (1990).   This is because courts do not sit to render advisory opinions.  *North Carolina v. Rice*, 404 U. S. 244, 246 (1971).  An actual controversy must exist at all times when the case is pending.  *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome.  *Weinstein v. Bradford*, 423 U.S. 147 (1975);  *Flast v. Cohen,* 392 U.S. 83, 95 (1968) ("Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."). "Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer,* 819 F.2d 1030, 1034 (11th Cir. 1987). Because mootness is jurisdictional, dismissal is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001).

In  *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987), the Eleventh Circuit Court of Appeals determined:

> A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the litigation, such as where there is no reasonable expectation that the violation will occur again or where interim relief or events have eradicated the effects of the alleged violation.

(citations omitted).

"Generally, a challenge to the constitutionality of a statute is mooted by repeal of the statute." *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1329 (11th Cir. 2004); *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) ("the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation."); *Kremens v. Bartley,* 431 U.S. 119, 128-29 (1977) (holding moot a constitutional challenge to a state statute governing the involuntary commitment of mentally ill minors, because the law had been replaced with a different statute). Here, repeal of the ACNA has rendered Plaintiff's requests for injunctive and declaratory relief in relation thereto moot and deprives the court of jurisdiction.

### 2. Damage Claims

#### a. Official Capacity

To the extent Plaintiff seeks to sue Defendants in their official capacities, the defendants, as state officials, are absolutely immune from suit for damages. *See Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). "A state, a

state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable." *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995).

### b.  Individual Capacity

#### 1.  Prospective Damages

The repeal of a challenged law does not necessarily moot a claim for damages by a plaintiff alleging a past violation of his rights. *Outdoor Media Group, Inc., v. City of Beaumont,* 506 F.3d 895, 902 (9th Cir. 2007). In this regard, however, the court must first consider whether Plaintiff suffered any injury with respect to his challenges concerning application to him of the ACNA as presented in the complaint. *Artway v. Attorney General of State of N.J.,* 81 F.3d 1235, 1246 (3rd Cir. 1996). The mere speculative threat of injury is insufficient for Article III purposes. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Thus, with regard to Plaintiff's request for damages in the instant action premised on the potential threat of application of various provisions of the now-repealed statute, he is entitled to no relief as a prospective damages claim may not be brought under § 1983. *See Tanner Advertising Group v. Fayette County,* 451 F.3d 777, 786 (11th Cir. 2006).

## 2.  Unlawful Confinement

To the extent Plaintiff's challenges the validity of his convictions pursuant to the ACNA, including a contention that application of the ACNA to him subjected him to double jeopardy, a civil rights lawsuit under 42 U.S.C. § 1983 is not an appropriate remedy.[2]  *See Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("''§ 1983 suit is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceeding) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").  An unlawful confinement does not constitute and "injury" until the confinement has been invalidated.

In *Heck  v. Humphrey,* 512 U.S. 477 (1994)*,* the Supreme Court held that a claim for damages challenging the legality of a prisoner's conviction or confinement is not cognizable in a 42 U.S.C. § 1983 action "unless and until the [order requiring such confinement] is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims must therefore be dismissed.  512 U.S. at 483-489.  The Court emphasized that "habeas corpus is the exclusive remedy for a [confined individual]

---

[2]According to Plaintiff's opposition, he entered guilty pleas on November 6, 2009 and May 17, 2010 to violating that provision of the ACNA which required an adult criminal sex offender to provide the address at which he or she would reside or live upon release from prison.  (*See Doc. No. 31.*)

who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983" and, based on the foregoing, concluded that Heck's complaint was due to be dismissed as no cause of action existed under section 1983. *Id*. at 481. In so doing, the Court rejected the lower court's reasoning that a section 1983 action should be construed as a habeas corpus action.

In *Edwards v. Balisok,* 520 U.S. 641 (1997), the Court further concluded that an inmate's "claim[s] for declaratory [and injunctive] relief and money damages, . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983 . . ." unless the inmate can demonstrate that the challenged action has previously been invalidated. *Id*. at 648. Moreover, the Court determined that this is true not only when a prisoner challenges the judgment as a substantive matter but also when "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id*. at 645. The Court reiterated the position taken in *Heck* that the "sole remedy in federal court" for a prisoner challenging the constitutionality of his confinement is a petition for writ of habeas corpus. *Id*. Additionally, the Court "reemphasize[d] . . . that a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id*. at 649.

With regard to any claims Plaintiff seeks to bring which challenge the constitutionality of his criminal convictions pursuant to violations of the ACNA, a judgment in favor of Plaintiff in this cause of action would necessarily imply the invalidity of those

convictions.  It is clear from the evidentiary material before the court that the convictions about which Plaintiff complains have not been invalidated in an appropriate proceeding.[3] Consequently, the instant collateral attack on the  convictions in question is prohibited. *Balisok,* 520 U.S. at 645; *Heck,* 512 U.S. at 481; *Preiser*, 411 U.S. at 488-490.  Such attack is, therefore, dismissed in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.  Due Process

Plaintiff complains that application to him of the ACNA infringed upon his constitutional right to due process, "denying him life, liberty, and pursuit of happiness," and essentially gave him a life sentence.  (*Doc No. 1, McKenzie Affidavit*.)   "The more common procedural component [of the Due Process Clause] guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 2648-49, 159 L.Ed.2d 578 (2004)."  *Moore*, 410 F.3d at 1342.  To succeed on a procedural due process claim, Plaintiff must establish that (1) the ACNA deprives him of a protected liberty interest, and

---

[3]The evidence before the court reflects that Plaintiff moved to dismiss his 2010 indictment for violating the residency requirement of the ACNA.  The circuit court denied the motion and Plaintiff entered a guilty plea to the ACNA violation while preserving his right to appeal the circuit court's ruling regarding the constitutionality of the pertinent code provision.  Plaintiff appealed arguing the residency requirement violated his right to equal protection.  Based on a then recent decision issued by the Alabama Court of Criminal Appeals regarding the constitutionality of the ACNA's registration requirement, the appellate court remanded Plaintiff's case to the circuit court to conduct an evidentiary hearing on his motion to dismiss the indictment.  (*See Doc. No. 31, Attachment*.)  Further proceedings in that matter are not part of the record in this action.

(2) the procedures accompanying the deprivation are constitutionally inadequate. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

Any procedural due process argument Plaintiff seeks to make before this court is foreclosed by *Connecticut Department of Public Safety*, 538 U.S. 1 (2003), in which the Supreme Court concluded "that no liberty interest was implicated because the Connecticut [sex offender registration] statute turned 'on an offender's conviction alone' and dangerousness 'is of no consequence under' the law." *Doe v. Moore*, 410 F.3d 1337, 1342 at n.3 (11th Cir. 2005) (quoting *Connecticut Department of Public Safety*, 538 U.S. at 7). Like the Connecticut law, the ACNA did "not turn on the dangerousness of the offender, merely the fact that he or she was convicted [of a sex offense]." *Id.* Thus, with respect to Plaintiff's procedural due process argument, the only relevant fact, *i.e.*, his convictions for criminal sex offenses, is not in dispute.  Specifically, with respect to an adult's prior convictions for first degree sexual abuse and first degree rape and application of the restrictive provisions of the ACNA based on such convictions, any procedural due process required prior to deprivation of life, liberty, property or the pursuit of happiness was met through the original proceedings that resulted in the convictions. *Connecticut Department of Public Safety*, 538 U.S. at 7-8.

### 4. Ex Post Facto

Plaintiff contends that as a result of the ACNA, he "[was] forced to serve a sentence

for a crime that was not a crime until now." (*Doc. No. 1, McKenzie Affidavit*.)  The *Ex Post Facto Clause* directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).  To the extent Plaintiff contends the ACNA imposed unconstitutional punishment under the *Ex Post Facto* Clause because the statute's provisions imposed greater punishment than the law applicable to his sexual offense convictions at the time they were committed, such claim entitles him to no relief.

The Supreme Court's decision in *Smith v. Doe*, 538 U.S. 84 (2003), forecloses Plaintiff's argument. In that case, the Court held that Alaska's sex offender registration act did not violate the *Ex Post Facto* clause, concluding that: (1) the Alaska legislature had intended the Act as a civil, non-punitive regulation aimed at protecting the public rather than punishing former sex offenders; and (2) the plaintiffs had not proved that the Act's effects transformed it into a criminal penalty, despite the legislature's intent to create a civil regulation. *See Id.* at 105-106. The court upheld the criminal penalties imposed on sex offenders for failing to register because "any prosecution [for failing to register] is a proceeding separate from the individual's original offense." *Id.* at 102;  *see also United States v. Ambert,* 561 F.3d 1202, 1207-08 (11th Cir. 2009) (holding federal Sex Offender Registration and Notification Act does not violate *Ex Post facto* clause because punishment was for violation of a new registration duty, not retroactive punishment for underlying

offense).

Other than the registration requirements and residency/employment restrictions, the ACNA did  not place mandatory conditions upon a sex offender nor did it provide for the offender's supervision by law enforcement officials.  *See* Ala. Code §§ 15-20-22, 23, 26 (repealed).  Although convicted sex offenders living in the free-world were required to advise law enforcement officials of their intent to change residences and/or places of employment, they could undertake such action in accordance with the ACNA's restrictions without having to seek or receive permission to do so.  *See Id*.  While a sex offender who failed to comply with the ACNA's reporting/registration requirements may have been subjected to criminal prosecution for that failure, "any prosecution [was] a proceeding separate from the individual's original offense."  *Smith*, 538 U.S. at 102.  The ACNA's directives that required a sex offender to undertake an in-person verification of his address with local law enforcement officials at 6-month intervals "ma[d]e a valid regulatory program effective and d[id] not impose punitive restraints in violation of the *Ex Post Facto* Clause." *Id.*

Here, Plaintiff has failed to produce any evidence that the effects of the ACNA negated Alabama's intention to establish a  civil regulatory scheme.  This court cannot "deem[] [the ACNA] punitive simply because it lack[ed] a close or perfect fit with the nonpunitive aims it s[ought] to advance.  The [challenges presented by Plaintiff do] not suggest that [ACNA's] nonpunitive purpose was a 'sham or mere pretext.' " *Smith*, 538 U.S.

16

at 103 (citation omitted).  The ACNA, when examined in light of the challenge presented by Plaintiff, did not impose punitive restraints.  Thus, retroactive application of the ACNA did not violate Plaintiff's rights under the *Ex Post Facto* Clause of the Constitution. Accordingly, Defendants' dispositive motion on Plaintiff's *ex post facto* claim is granted.

### 5. *Religion*

Plaintiff alleges that he was denied his choice of religion when members of a church refused to allow him join due to his status as a convicted sex offender and the ACNA's registration requirement.  (*Doc. No. 1, McKenzie Affidavit*).  This claim entitles Plaintiff to no relief as he fails to implicate any action taken by the named Defendants which caused a violation of his First Amendment rights. *See Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940) (the First Amendment to the United States Constitution provides, in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." It applies to the states via the Fourteenth Amendment.).  While Plaintiff may have been disappointed in the decision of the church members, as the Supreme Court noted in *Smith*, "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the [ACNA]'s registration and dissemination provisions, but from the fact of conviction, already a matter of public record.  The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they

17

deem necessary before dealing with the registrant."  538 U.S. at 101. Defendants are

entitled to summary judgment on Plaintiff's First Amendment claim.

6.  *Privacy*

Plaintiff claims that the ACNA's registration requirement violated his right to privacy

because it required him to disclose information about where he lived and worked. Plaintiff

further complains he felt endangered  after his picture was posted in a United States Post

Office "as if [he was] one of America's most wanted. Especially after [he] [] completed [his]

sentence" for his sexual offense convictions.[4]    (*Doc. No. 1, McKenzie Affidavit*.)

In *Doe*, 410 F.3d 1337, the Eleventh Circuit held:

> This substantive [due process] component protects fundamental rights
> that are so "implicit in the concept of ordered liberty" that "neither liberty
> nor justice would exist if they were sacrificed." *See Palko v. Connecticut*,
> 302 U.S. 319, 325, 326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937); *McKinney
> v. Pate*, 20 F.3d 1550, 1556 (11th Cir.1994) (en banc).  Fundamental rights

---

[4]In very generalized  fashion, Plaintiff also asserts that he was denied his "right[] to associate with
whomever [he] wanted to," that he was told he "could not be in any park, or places where [he] could just
enjoy life," that he was told he "could not have children or be around children," or marry a woman who had
children from a previous relationship without first obtaining permission from the police, that he had been
told he could not travel outside the State of Alabama, and that even if he could purchase multiple residences
the ACNA prohibits such. (*Doc. No. 1, McKenzie Affidavit*.)  The court finds these contentions to be overly
broad, conclusory, lacking in any factual support, and/or speculative. *See Ashcroft v. Iqbal,* 556 U.S. 662,
129 S.Ct. 1937 (2009).  Plaintiff cannot rely on subjective suspicions and unsupported speculation but must
provide  sufficient facts to support his allegations.   *See Id.* at 677-79; *see also Fullman v. Graddick*,  739
F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory allegations fail to state a claim upon which relief
can be granted and are subject to dismissal). Thus, to the extent the above-noted assertions were intended
as separate right to privacy claims, as pled, they fail to state a plausible claim for relief against any named
defendant. *Iqbal*, 556 U.S. at 678 (citation omitted) ("the pleading standard Rule 8 announces does not
require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-
harmed-me accusation.").

protected by substantive due process are protected from certain state actions regardless of the procedures the state uses. *See Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997); *McKinney*, 20 F.3d at 1556. When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267; *Paul v. Davis*, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267 (citations omitted). The Court, however, is very reluctant to expand substantive due process by recognizing new fundamental rights, explaining:

> we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore "exercise the utmost care whenever we are asked to break new ground in this field," lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.

*Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267-68 (citations omitted).

*Id.* at 1342-1343.

Substantive due process is not implicated with respect to Plaintiff's challenges to the disclosure and/or circulation of the information described as he has failed to

19

demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of accurate information that is already, albeit less conveniently, available in the public domain.  In reaching this conclusion, the court relies on the Supreme Court's reasoning in *Smith v. Doe, supra*.  "Although the issue presented in *Smith* was whether Alaska's internet registry constituted an impermissible ex post facto statute and the registrants did not raise any privacy claims, the Supreme Court's views as to disclosure of Megan's Law information via the internet were made abundantly clear.  In rejecting the registrants' argument that posting their information on the internet constituted punishment, the Court stated: 'The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender.  Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.  538 U.S. at [99], 123 S.Ct. at 1150.' "[5]  *A.A. ex rel. M.M. v. New Jersey*, 341 F.3d 206, 213 (3rd Cir. 2003).  As previously explained, any negative consequences resulting from application of the registration and notification provisions at issue arose from the actions of the registrants themselves.  *See Smith*, 538

---

[5]"Megan's law information" refers to enactment of laws by  Congress and all 50 states  requiring sex offenders to register their residence with local law enforcement.  *See Smith v. Doe*, 538 U.S. 84, 89-90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164 (2003). States enacted these laws for the purpose of notifying the public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes.  *See Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 123 S.Ct. 1160, 1163, 155 L.Ed.2d 98 (2003)."  *Doe v. Moore*, 410 F.3d 1337, 1340 (11th Cir.), *cert. denied*, *John Doe I v. Moore*, 546 U.S. 1003, 126 S.Ct. 624, 163 L.Ed.2d 506 (2005).  ASORCNA is currently Alabama's version of such law.

U.S. at 101. The *Smith* Court further noted that the nature of the process mitigated against the offenders' constitutional concerns. *Id.* at 101-102. Although the ACNA allowed for personal notification via regular mail or hand delivered notices to those persons living within extremely close proximity to the convicted sex offender, "any other method reasonably expected to provide notification may be utilized, including, but not limited to, posting a copy of the notice in a prominent place at the office of the sheriff and at the police station closest to the declared residence of the released criminal sex offender, publicizing the notice in a local newspaper, or posting electronically, including the Internet, or other means available....   Nothing in this article shall be construed as prohibiting the Department of Public Safety, a sheriff, or a chief of police from providing community notification under the provisions of this article electronically or by publication or periodically to persons whose legal residence is more than the applicable distance from the residence of an adult criminal sex offender." *Ala. Code* § 15-20-25(b)-(c) (repealed). Thus, the vast majority of "individual[s] seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information.  The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality.  The Internet makes the document search more efficient, cost effective, and convenient for [the State's] citizenry." *Smith*, 538 U.S. at 99.

Based on the foregoing, the court concludes Plaintiff is entitled to no relief on his privacy claims. Summary judgment is, therefore, granted in favor of Defendants on these challenges.

### 7. Equal Protection

Plaintiff alleges the ACNA violated his right to equal protection because it caused him to be treated differently than other criminal offenders due to the requirement that he have on his person at all times  an identification card which, presumably, designated him as a sex offender. He claims that "[n]o one else in the U.S. is required to carry [such] an I.D." (*Doc. No. 1, McKenzie Affidavit*.)

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed.... The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [treatment among prisoners].'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national

origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292 (1987).

Since this case is before the court on a properly supported motion for summary judgment submitted by Defendants, Plaintiff bears the burden of producing evidence which would be admissible at trial sufficient to show:  (1) Defendants provided more favorable treatment to other similarly situated inmates, *i.e.*, did not require other inmates convicted of criminal sex offenses against a child to carry a sexual offender identification card; ***and*** (2)

the decision to deny him favorable treatment resulted from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (To preclude summary judgment, plaintiff must present significant probative evidence showing defendants provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination.); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendants in providing the challenged disparate treatment is required. "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause."). Plaintiff fails to identify any other offender with a similar sex offense involving a child towards whom Defendants acted in a more favorable manner and, thus, his "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated [offenders]." *Sweet*, 467 F.3d at 1319; *Hammond*, 669 F.Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently....  [T]here is *no* evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff....  The plaintiff has offered the Court nothing on which to base his equal protection claim.  Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit."); *Cf.*

24

*Hendking v. Smith,* 781 F.2d 850, 851-52 (11th Cir. 1986) (states may properly categorize prisoners according to the type of offense they committed; it is the nature and circumstances of a crime, not simply the type or nomenclature of the conviction, which legitimately may be used by prison authorities to determine the custody classification of prisoners).

Here, Plaintiff has failed to demonstrate that he was subjected to any actionable disparate treatment. Defendants are, therefore, entitled to summary judgment on Plaintiff's equal protection claim.

### 8.   *Remaining Federal Claims*

Plaintiff broadly maintains that by enacting, applying and enforcing the ACNA Defendants willfully subjected him to and/or conspired to subject him to alleged violations of his substantive rights, privileges and immunities protected by the Constitution, including various rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments, as well rights protected under Art. 1, § 9, the Constitutional Rights of Incarcerated Persons Act ["CRIPA"], 42 U.S.C. § 1997, *et seq.*, the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"], 42 U.S.C. § 2000cc(1)(a), *et seq.*, and the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.* (*See Doc. No. 1, pgs. 7-13*.) To the extent these allegations have not heretofore been addressed and/or are not subject to dismissal for the reasons explained in ¶A(1)-(7), and to the extent Plaintiff may bring a cause of action under the amendments and/or Acts delineated above, his contentions are merely

broad assertions of constitutional violations without any facts to support his asseverations that Defendants violated or conspired to violate his rights under the Constitution and stated statutory provisions through enactment, application and/or enforcement of the ACNA.[6] *See Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). That is, Plaintiff's complaint fails to identify any specific facts that allow the court to make a plausible inference that any of the conduct or actions he attributes to the named defendants amounted to a violation of his constitutional rights. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). "[A] complaint must contain sufficient factual

---

[6]With respect to Plaintiff's challenge to Defendants "enactment" of the ACNA, none of the named Defendants are or were responsible for enacting state laws. Even if Plaintiff had named a proper defendant, the Supreme Court has "recognized that state legislators enjoy common-law immunity from liability for their legislative acts" and that this immunity can shield officials against suits brought under 42 U.S.C. § 1983 seeking damages, declaratory relief, or injunctive relief. *Supreme Court of Va. v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 732 (1980) (citing *Tenney v. Brandhove,* 341 U.S. 367 (1951)); *see also Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1062 (11th Cir. 1992) (legislative immunity applies to "those acts which are 'necessary to preserve the integrity of the legislative process.'") (quoting *United States v. Brewster,* 408 U.S. 501, 517 (1972)). In *Scott v. Taylor,* 405 F.3d 1251, 1257 (11th Cir. 2005), the Eleventh Circuit concluded that state legislators who act in their legislative capacities are entitled to absolute legislative immunity whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacity.

26

matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S. 555, 556 (2007)). Plaintiff cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show how the conduct or actions of a  defendant amounted to a violation of his constitutional rights.  *Id.* Further, "[b]ecause vicarious liability is inapplicable to ... [section] 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.  A plaintiff must plead that a defendant acted with "purpose rather than knowledge" to satisfy this standard. *Id.* at 677.

Here, Plaintiff fails to specify the injury or harm caused by any of Defendants' allegedly unconstitutional conduct and/or asserts allegations of injury which are speculative in nature with regard to the claims noted above. These shortcomings, coupled with his broad and unsubstantiated assertions of constitutional violations against the named defendants without any factual development to support them, are insufficient to defeat Defendants' motion for summary judgment.  The court, therefore, concludes that Defendants' dispositive motion shall be granted with respect to the allegations set forth above to the extent they are

not otherwise subject to dismissal for the reasons previously explained, *infra*.[7] *Celotex*, 477 U.S. at 324; *Harris*, 65 F.3d at 916.

B.  *Sex Offender Registry*

In an amendment to the complaint, Plaintiff alleges that Defendants should institute a tiered classification system based on a convicted sex offender's individual dangerousness. Plaintiff argues that the failure of the State of Alabama to have such a classification system on its website registry of sex offenders violates his constitutional rights. That is, Plaintiff maintains that without providing information on the registry of sex offenders as to a registrant's dangerousness, those presumably not dangerous must endure the stigma of the general public erroneously thinking otherwise.   (*Doc. No. 12*.)

As explained, in *Connecticut Department of Public Safety,* 538 U.S. 1, the Court addressed a Fourteenth Amendment Due Process challenge to Connecticut's sex offender registration and notification law on grounds that it did not provide registrants a pre-

---

[7]The court notes that Plaintiff asserts Defendants conspired to violate his rights under 42 U.S.C. § 1985, as well as under 42 U.S.C. § 1983.  Under § 1985, Plaintiff must establish (a) the existence of a conspiracy; (b) that Defendants intended to deny Plaintiff of his equal protection of laws, or equal privileges and immunities under the laws; (c) injury or deprivation of a federally-protected right; (d) an overt act in furtherance of the object of the conspiracy; and (e) some racial or otherwise class-based invidiously discriminatory animus behind the conspirator's action. *See Arnold v. Board of Education of Escambia County, Alabama,* 880 F.2d 305, 317-318 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993). As the court has already determined, Plaintiff's allegations of a conspiracy between Defendants are conclusory, vague, and general which is insufficient. *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990); *Fullman,* 739 F.2d at 556-57. Additionally, Plaintiff has not alleged that Defendants' conduct was motivated by race or any other class-based invidiously discriminatory animus. Consequently, Plaintiff fails to state a claim for relief under § 1985.

deprivation hearing to determine whether they were currently dangerous. Reasoning that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," *Id.* at 4, and that Connecticut's registration requirement was "based on the fact of previous conviction, not the fact of current dangerousness," the Supreme Court found that "due process does not entitle [a defendant] to a hearing...." *Id.* at 4, 7.

Here, Plaintiff's contention that he has a constitutional right not to be stigmatized due to omission of a registrant's dangerousness on Alabama's sex offender registry and website listings entitles him to no relief. Although Plaintiff does not assert violation of a specific federal constitutional right with regard to this claim, the court understands him as implicating the Fourteenth Amendment Due Process Clause. The law is well-settled, however, that damage to reputation alone does not implicate a protected liberty or property interest. *See Paul v. Davis,* 424 U.S. 693, 701 (1976). In order for a defamation claim to be viable under § 1983, Plaintiff must show that the "governmental action taken ... deprived [him] of a right previously held under state law." *Id.* at 708. That is, in addition to showing reputational harm, Plaintiff must also show an alteration or extinguishment of an interest protected by the Constitution or state law. *Id.* at 708-09. This is known as the "stigma-plus" test. *Id.* at 711.

The Court in *Connecticut Department of Public Safety*, *supra*, applied the "stigma-plus" test in context of the challenge to Connecticut's sex offender registry law. As noted, the Court determined that because the basis of Connecticut's registration requirement is the fact of conviction alone, dangerousness and the opportunity to be heard on the issue of

dangerousness are simply not material issues. *See Id.* at 7-8.  Alabama's current sex offender website registry is based upon the fact of an offender's conviction.  There is no indicator or statement regarding the dangerousness of the persons listed on the registry. *See* Alabama Department of Public Safety Community Information Center, *available at* [http://dps.alabama.gov.](http://dps.alabama.gov.) *See* Ala. Code § 15-20A-8.[8]  Further, there is no indicator on the website that the State has made an individual determination regarding a registrant's dangerousness and cautions persons viewing the site that "the information contained on th[e] site may not reflect the current residence, status, or other information regarding the offender." *See Id.*  Thus, similar to the *Connecticut Dept. of Public Safety v. Doe* Court, the State "has decided that the registry of information of *all* sex offenders - currently dangerous or not - must be publicly disclosed" and  "states are not barred by principles of '*procedural* due process' from drawing such classifications." *Id.* 538 U.S. at 11 (emphasis in original). Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's sex offender registry classification claim.

## C.  The Exercise of Supplemental Jurisdiction

Plaintiff seeks to invoke the supplemental jurisdiction of this court with respect to his claims arising under state law. In the posture of this case, however, the exercise of such

---

[8]Ala. Code § 15-20A-8 concerns registration information for the public registry website and delineates the information which is to be provided.

jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented in the complaint, Plaintiff's supplemental state law claims are due to be dismissed.  *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

A separate Order follows.

Done, this 29th day of April 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE